IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

ALLISHA K. and YAMAN F.
TAYLOR,

      Plaintiffs,

v.

NATIONSTAR MORTGAGE, LLC,

      Defendant.

CIVIL ACTION NO.
1:15-CV-4403-AT-LTW

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This case is presently before the Court on Defendant Nationstar Mortgage, LLC's ("Nationstar") Motion to Dismiss (Doc. 4), Plaintiffs Allisha K. Taylor and Yaman F. Taylor's ("Plaintiffs") Motion to Sever and Remand (Doc. 6), and Nationstar's Motion to Dismiss Plaintiffs' Amended Complaint in Part (Doc. 9).  For the reasons outlined below, this Court **RECOMMENDS** that Nationstar's first Motion to Dismiss be **DEEMED MOOT** (Doc. 4), Plaintiffs' Motion to Sever and Remand be **GRANTED** (Doc. 6), and Nationstar's Motion to Dismiss Plaintiffs' Amended Complaint in Part be **GRANTED** as to Plaintiffs' claims brought pursuant to the Fair Debt Collection Practices Act (Doc. 9).

## PLAINTIFFS' MOTION TO SEVER AND REMAND

Plaintiffs filed the instant lawsuit on November 16, 2015, in the Superior Court of Clayton County, alleging that Nationstar's attempts to collect a debt from Plaintiffs

violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq., the Telephone Consumer Protection Act, 47 U.S.C. § 227(a)(iii) ("TCPA"), and the Georgia Fair Business Practices Act, O.C.G.A. §§ 10-1-390 et seq. ("GFBPA"). Specifically, Plaintiffs contended that Nationstar violated Section 1692g of the FDCPA when it ignored Plaintiffs' November 24, 2014 and January 27, 2015 requests that it validate the debt and continued to collect the debt. Plaintiffs also contended that unspecified conduct violated Section 1692e and 1692f of the FDCPA. (Compl. ¶¶ 45-47). Plaintiffs claimed that Nationstar violated the TCPA when it repeatedly called him and texted him on his cellular phone using an automated system even though he requested that it cease doing so. Plaintiffs appeared to argue that Nationstar's conduct in violation of the FDCPA and TCPA also violated the GFBPA. Plaintiffs also claimed that title to their property should be quieted because the Assignment to Nationstar was not valid because it was done in violation of a land grant. On December 18, 2015, Nationstar removed the case here, arguing that the Court had subject matter jurisdiction on the basis of federal questions within the complaint as well as diversity of citizenship.

Plaintiffs contend in their Motion to Sever and Remand, that their quiet title claim should be severed from the case and remanded back to the Superior Court of Clayton County pursuant to 28 U.S.C. § 1441(c). In support, Plaintiffs contend that the Court does not have supplemental jurisdiction over the quiet title claim. Additionally, Plaintiffs contend that Georgia law provides that a special master shall have exclusive jurisdiction over such claims, but federal court has no similar procedure. In response,

AO 72A
(Rev.8/82)

Nationstar argues that Plaintiffs' Motion should be denied because the Court has diversity jurisdiction in this case.  Nationstar further contends that even if the Court did not have diversity jurisdiction, the Motion should be denied because the Court also has supplemental jurisdiction over Plaintiffs' quiet title claim.  In support, Nationstar argues that Plaintiffs' federal claims and quiet title claim both relate to the non-judicial foreclosure of Plaintiffs' property and Nationstar's conduct in connection with its servicing their loan.  Nationstar argues that as a result, both the federal and state claims are based on a common nucleus of operative fact.

This Court agrees with Plaintiffs that the quiet title claim should be severed, based on the facts as alleged.  Diversity jurisdiction is not shown to be a basis for jurisdiction over Plaintiffs' quiet title claim because Nationstar fails to allege sufficient facts demonstrating that there is complete diversity of citizenship between the parties.  A party removing a case to federal court based on diversity of citizenship bears the burden of establishing that the parties are diverse and the $75,000 amount in controversy jurisdictional threshold is met.  Rolling Greens MHP, L.P. v. Comcast SCH Holdings L.L.C., 374 F.3d 1020, 1022 (11th Cir. 2004); Fowler v. Safeco Ins. Co. of Am., 915 F.2d 616, 618 (11th Cir. 1990).   A limited liability company ("LLC"), unlike a corporation, is a citizen of any state in which one of its members is a citizen, not of the state where the company was formed or has it principal office.  See Rolling Greens MHP, L.P., 374 F.3d at 1022.  Here, because the LLC is composed of multiple layers of constituent entities, "the citizenship determination requires an exploration of the

citizenship of the constituent entities as far down as necessary to unravel fully the citizenship of the entity before the court." Purchasing Power, LLC v. Bluestem Brands, Inc., No. 1:12-CV-258-WSD, 2015 WL 73980, at *5 (N.D. Ga. Jan. 6, 2015) (citing RES-GA Creekside Manor, LLC v. Star Home Builders, Inc., No. 10cv207, 2011 WL 6019904, at *3 (N.D. Ga. Dec. 2, 2011)); Cumulus Radio Corp. v. Olson, No. 15-CV-1067, 2015 WL 1110592, at *3-4 (C.D. Ill. Mar. 10, 2015) (explaining that in order to resolve the question of the LLC's citizenship, the Court "needs to know each member's citizenship, and if necessary, each member's members"). Here, Nationstar's petition for removal does not focus upon facts addressing the citizenship of Nationstar. Instead, Nationstar's petition for removal only discusses the ownership of Nationstar and the entities that own it. Nationstar alleges:

> Nationstar is a foreign limited liability company organized and existing under the laws of Delaware with its principal place of business in Coppell, Texas. Nationstar is an indirect, wholly-owned subsidiary of a publicly-traded company, Nationstar Mortgage Holdings, Inc. ("NSM Holdings"). Nationstar is directly owned by two entities: (1) Nationstar Sub1 LLC ("Sub1") (99%) and (2) Nationstar Sub2 LLC ("Sub2") (1%). Both Sub1 and Sub2 are Delaware limited liability companies. Both Sub1 and Sub2 have a principal place of business located in Coppell, Texas.

> Sub1 and Sub2 are both 100% owned by NSM Holdings, a Delaware Corporation. NSM Holdings' principal place of business is in Coppell, Texas.

(Doc. 1, at 4). Nationstar's discussion of the ownership of Nationstar and the ownership of the entities which own Nationstar does not settle the question of Nationstar's citizenship. As noted above, when determining the citizenship of limited liability companies, the question is who are the members of the limited liability company and

4

what are the members' citizenship.  This questioned is not resolved by answering the question of ownership, because under Delaware law, the state of origin for Nationstar and the entities which own it, one can have an ownership interest in a limited liability company without being a member.  See, e.g., Del. Code Ann. tit. 18, § 301(b) (explaining how one who is admitted as a member of an LLC after formation of it becomes a member when not assigned an interest in the LLC); Del. Code Ann. tit. 18, § 702(b) (explaining that the "assignment of a limited liability company interest does not entitle the assignee to become or to exercise any rights or powers of a member" but that the assignee of such an interest is entitled to "share in such profits and losses"); Achain, Inc. v. Leemon Family LLC, 25 A.3d 800, 804-05 (Del. Ch. 2011) (explaining that the default rule under statutes providing for LLCs in Delaware is that "an assignment of an LLC interest, by itself, does not entitle the assignee to become a member of the LLC; rather, an assignee only receives the assigning member's economic interest in the LLC to the extent assigned," but that the "default rule may be displaced by the provisions of an LLC agreement"); In re Carlisle Etcetera LLC, 114 A.3d 592, 600-01 (Del. Ch. 2015) (explaining that the Act's default rule may rest on the notion that one generally is entitled to select his own business associates in a closely held enterprise and that it is far more tolerable to have to suffer a new passive co-investor one did not choose than to endure a new co-manager without consent).  The reverse is true as well: "[A] person may be admitted to a limited liability company as a member of the limited liability company without acquiring a limited liability company interest in the limited

5

liability company." Del. Code Ann. tit. 18, § 301(d); Carter G. Bishop & Daniel S. Kleinberger, Limited Liability Companies: Tax and Business Law § 14.03 (2016) (explaining that a person can be a member of a Delaware LLC without having any economic rights). Thus, it appears that one can be an owner without being a member and one can be a member without being an owner. Therefore, Nationstar's identification of its owners and the owner of its owners does not answer the question of the citizenship of Nationstar because there may be members who are not owners or its owners may not be members. Thus, Nationstar has not alleged sufficient facts demonstrating that diversity jurisdiction is appropriate. See Cumulus Radio Corp., 2015 WL 1110592, at *3-4; Merchant Cash & Capital, LLC v. Edgewood Grp., LLC, No. 14cv03497 (JGK)(DF), 2015 WL 4430643, at *8 (S.D.N.Y. July 2, 2015 (finding that plaintiff did not allege sufficient facts establishing diversity jurisdiction because even though complaint indicated that LLC's owner was a Virginia resident, it did not indicate the citizenship of any of the LLC's members or even whether the LLC had multiple members); Charter Servs. v. DL Air, LLC, No. 08-658-KD-C, 2009 WL 577664, at *1 (S.D. Ala. Mar. 5, 2009) (finding that defendant did not adequately address membership of Delaware LLC for purposes of removal where it identified only the owner of LLC without indicating whether there were other members of the LLC). Based on the limited allegations of the Notice of Removal, this Court cannot concur at this juncture that the

6

parties are completely diverse.[1]   The burden is on the party who seeks removal to demonstrate that federal jurisdiction exists. <u>Bank of New York v. Angley</u>, 559 F. App'x 956, 957 (11th Cir. 2014).  As such, the removing party's burden extends to making and supporting the arguments necessary to sustain removal.  <u>Ervast v. Flexible Prods. Co.</u>, 346 F.3d 1007, 1017 n.4 (11th Cir. 2003) (declining to consider argument concerning diversity jurisdiction, raised for the first time in petitioner's appellate brief, because petitioner had "the burden to plead this basis in its notice of removal"); <u>Bank of New York Mellon v. Beccan</u>, No. 1:12-CV-01392-RWS, 2013 WL 3990753, at *3 (N.D. Ga. Aug. 1, 2013) (rejecting Section 1443 as a basis for removal of dispossessory action because defendant did not provide any factual basis supporting removal under Section 1443); <u>Alcan Inv., LLC v. C-D Jones & Co., Inc.</u>, No. 09-0492-WS-N, 2009 WL 2762828, at *7 (S.D. Ala. Aug. 27, 2009) (noting that when the defendants elected to support removal under one legal authority, they risked remand if the court disagreed that the authority provided a basis for removal and no duty devolved upon the court to conduct additional legal research or construct additional arguments on the defendants' behalf).

Additionally, remand of Plaintiffs' quiet title claim is proper because there is no

---

[1]   To the extent that Nationstar can allege additional facts showing all of the members of Nationstar, Nationstar may request to amend its Notice of Removal to add necessary jurisdictional facts and may explain in objections to this Report and Recommendation how such facts demonstrate that the parties are completely diverse.

basis for the Court to exercise supplemental jurisdiction over the claim. Under Title 28, Section 1441(c), when a case has been removed to federal court on the basis of federal question jurisdiction and there are state law claims which do not fall within the court's supplemental jurisdiction, the court is required to sever and remand the claims to state court under 28 U.S.C. § 1441(c)(2); Deac v. Il Postino, Inc., No. 12-CV-5952 (NGG), 2014 WL 4437311, at *8 (E.D.N.Y. Aug. 15, 2014). A federal court may exercise supplemental jurisdiction over state law claims which arise out of a common nucleus of operative fact with a substantial federal claim. 28 U.S.C. § 1367(a); Upper Chattahoochee Riverkeeper Fund, Inc. v. City of Atlanta, 701 F.3d 669, 678 (11th Cir. 2012); Palmer v. Hosp. Auth. of Randolph Cty., 22 F.3d 1559, 1563-64 (11th Cir. 1994) (explaining that because state and federal claims arose from the same two incidents, involved the same witnesses and evidence, and involved determination of same or similar facts, district court had supplemental jurisdiction over state law claims). In analyzing whether the state law claim is part of the same case or controversy, the court also examines whether the state and federal claims involve similar occurrences, witnesses, or evidence. Hudson v. Delta Air Lines, Inc., 90 F.3d 451, 455 (11th Cir. 1996). The federal court's power or jurisdiction to entertain pendent state claims is ordinarily determined on the pleadings and in the case of removal, jurisdiction is tested as of the time of removal. Ehlen Floor Covering, Inc. v. Lamb, 660 F.3d 1283, 1287 (11th Cir. 2011) ("Jurisdiction is determined by looking to the face of the plaintiffs' well-pleaded complaint, so we examine the plaintiffs' original complaints entered at the

time of removal."); <u>L.A. Draper</u>, 735 F.2d at 427.

In this case, Plaintiffs' FDCPA and TCPA claims[2] do not share the same nucleus of operative fact with Plaintiff's quiet title claim. Plaintiffs' FDCPA and TCPA claims appear to concern the manner in which Nationstar attempted to collect a debt from Plaintiffs. Specifically, Plaintiffs' FDCPA claim concerns Plaintiffs' attempts to have Nationstar validate a debt and Plaintiffs' TCPA claims concern the manner in which Nationstar attempted to contact them on their cellular phones. Plaintiffs' quiet title claim concerns whether or not MERS, as nominee for Freemont Loan & Investment, could properly assign Plaintiffs' interests in the Security Deed to Nationstar when Plaintiffs' property was part of a land grant. Based on these limited allegations, there does not appear to be any relationship between Plaintiffs' quiet title claim and their federal claims. Here, the federal and state claims would require completely different evidence and methods of proof. Plaintiffs' TCPA claims would concern the manner in which telephone calls were made and their FDCPA claims would concern whether Nationstar took any action to validate a debt and whether it continued to attempt to collect the debt after Plaintiffs requested validation. In contrast, Plaintiffs' quiet title claim would concern the nature of the property secured by the deed and the rights under the Security Deed. <u>Morgan v. JP Morgan Chase Bank</u>, No. 3:13-CV-00842-BR, 2013

---

[2] In <u>Mims v. Arrow Fin. Servs., LLC</u>, 132 S. Ct. 740 (2012), the Supreme Court held that federal and state courts have concurrent jurisdiction over private suits arising under the TCPA and therefore, TCPA claims give rise to federal question jurisdiction.

9

WL 5729629, at *4 (D. Or. Oct. 22, 2013) (finding that FDCPA claim did not provide jurisdictional anchor for legal malpractice claims because they relied upon different facts).  Because the Court does not have supplemental jurisdiction over Plaintiffs' quiet title claim, this Court **RECOMMENDS** that Plaintiffs' Motion be **GRANTED** and that Plaintiffs' quiet title claim be **SEVERED AND REMANDED** to the Superior Court of Clayton County.  (Doc. 6).

## NATIONSTAR'S FIRST MOTION TO DISMISS

On December 28, 2015, Nationstar filed its first Motion to Dismiss.  (Doc. 4). Therein, Nationstar contended that (1) Plaintiffs' original Complaint was a shotgun pleading; (2) Plaintiffs' FDCPA claims failed because they were untimely, they were insufficiently pled, and Plaintiffs failed to allege sufficient facts showing that Nationstar was a debt collector; (3) Plaintiffs failed to state claims pursuant to the TCPA because they did not plausibly allege that Nationstar used an automatic telephone dialing system or an artificial or prerecorded voice; (4) Plaintiffs' GFBPA claims fail because the GFBPA does not apply to private mortgage transactions and because Nationstar's alleged violation did not affect the consuming public generally; and (5) Plaintiffs failed to state a quiet title claim because they failed to allege that they tendered the amount due under the Note and Security Deed, Plaintiffs lack standing to challenge Assignments of the Security Deed, Plaintiffs fail to show how the Assignment is a cloud on their title, and Plaintiffs failed to comply with pleading requirements of the Georgia Quiet Title Act.  Because Plaintiffs filed an Amended Complaint after Nationstar filed its original

10

Motion to Dismiss and because Nationstar subsequently filed a Motion to Dismiss Plaintiffs' Amended Complaint raising similar grounds, Nationstar's original Motion to Dismiss should be **DEEMED MOOT**.  (Doc. 4).

## NATIONSTAR'S MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT IN PART

### I.   BACKGROUND

On January 7, 2016, Plaintiffs amended their Complaint.  (Doc. 7).  In their Amended Complaint, Plaintiffs contend that Nationstar violated Section 1692g of the FDCPA when it failed to send, within five days of attempting to collect a debt from Plaintiffs, a letter listing the amount of the debt, identifying the creditor, and including a statement that Plaintiffs have the right to dispute the debt within thirty days.  (Am. Compl. ¶¶ 12, 18-20).  Plaintiffs further contend that Nationstar failed to validate the debt after Plaintiffs requested that it do so on November 24, 2014, and January 27, 2015.  (Am. Compl. ¶¶ 12, 18-20).  Plaintiffs also argue that Nationstar violated Section 1692e because they used false and deceptive means to collect a debt and Section 1692f because they used unfair or unconscionable means to collect a debt.  (Am. Compl. ¶¶ 48, 49).  Additionally, Plaintiffs argue that Nationstar violated the TCPA when it used an automated dialing system to contact their cellular phone without their consent seventeen times between April 2015 and August 2015.  (Am. Compl. ¶¶ 23-39).  Finally, Plaintiffs argued that they are entitled to have title to their property in Jonesboro, Georgia quieted because the interest to the property was conveyed to them by a land grant legal title and

11

was therefore assigned to Plaintiffs forever.  (Am. Compl. ¶¶ 40-44).

In Nationstar's Motion to Dismiss Plaintiffs' Amended Complaint, it contends that (1) some of Plaintiffs' FDCPA claims fail because they are barred by the one-year limitations period for such claims; (2) Plaintiffs' claims pursuant to Sections 1692e and 1692f of the FDCPA fail because they are inadequately pled; (3) Plaintiffs' claims pursuant to Section 1692g of the FDCPA fail because exhibits to Plaintiffs' Amended Complaint show that Nationstar complied with its obligation to acknowledge and validate the debt; and (4) Plaintiffs' quiet title claim fails because it is inadequately pled, Plaintiffs failed to tender the amount due under the loan, Plaintiffs lack standing to challenge Assignments of the Security Deed, and Plaintiffs have failed to comply with pleading requirements mandated by Georgia's Quiet Title Act.

## II.     LEGAL ANALYSIS

### A.     12(b)(6) Motion to Dismiss Standard

Dismissal is warranted under Rule 12(b)(6) if, assuming the truth of the factual allegations of the plaintiff's complaint, there is a dispositive legal issue which precludes relief or it is based on an indisputably meritless legal theory.  Neitzke v. Williams, 490 U.S. 319, 326 (1989); Brown v. Crawford Cty., 960 F.2d 1002, 1009-10 (11th Cir. 1992).  A Rule 12(b)(6) motion to dismiss also tests the sufficiency of the complaint against the legal standard set forth in Rule 8: "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  A complaint "requires more than labels and conclusions, and a formulaic recitation of the elements

AO 72A
(Rev.8/82)

of a cause of action will not do." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007). To state a claim with sufficient specificity requires that the complaint have enough factual matter taken as true to suggest required elements of the claim. <u>Watts v. Fla. Int'l Univ.</u>, 495 F.3d 1289, 1296 (11th Cir. 2007); <u>Hill v. White</u>, 321 F.3d 1334, 1335 (11th Cir. 2003). Factual allegations in a complaint need not be detailed but "must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." <u>Twombly</u>, 550 U.S. at 555 (citing <u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506, 508 n.1 (2002)).

**B.    <u>Section 1692g Claims</u>**

Plaintiffs appear to contend that Nationstar violated Section 1692 of the FDCPA on three occasions. First, Nationstar allegedly violated Section 1692g when it failed to send, within five days of attempting to collect a debt from Plaintiffs, a letter which listed the amount of the debt, identified the creditor, and included a statement that Plaintiffs have the right to dispute the debt within thirty days. (Am. Compl. ¶ 12). Second, Plaintiffs assert that Nationstar violated Section 1692g when it failed to validate the debt after Plaintiffs requested that it do so on November 24, 2014, and continued attempting to collect the debt. (Am. Compl. ¶ 18). Plaintiffs state that they sent Nationstar a letter on November 24, 2014, requesting that Nationstar validate the debt. Although Nationstar wrote Plaintiffs on December 1, 2015, indicating that it would respond by January 8, 2015, it did not do so. (Am. Compl. ¶ 18). Finally, Plaintiffs state that on January 27, 2015, they sent Nationstar a "Request for Admissions and another Debt

13

Validation letter," but Nationstar only responded by stating that Bank of New York as Trustee for HELT 2007-FRE1 was the owner of the loan and Nationstar was the servicer and debt collector.  (Am. Compl. ¶¶ 12, 18-20).  Nationstar did not answer Plaintiffs' Request for Admissions.  (Am. Compl. ¶ 19).

Nationstar contends that Plaintiffs' Section 1692g claims accruing prior to November 16, 2014, are time-barred.  Nationstar further contends correspondence attached to Plaintiffs' Amended Complaint shows that it satisfied its obligations to validate Plaintiffs' debt.  In support, Nationstar points out that based on Plaintiffs' statements within their January 27, 2015 letter attached to the Amended Complaint, it responded to Plaintiffs' November 24, 2014 request for validation of the debt and provided Plaintiffs with a copy of the Security Deed.  (See Doc. 7-3, at 2-3).

### 1. Proper Notice of Debt

As noted above, Plaintiffs first appear to contend that Nationstar violated Section 1692g when it failed to send, within five days of attempting to collect a debt, a letter listing the amount of the debt Plaintiffs owed, identifying the creditor, and including a statement that Plaintiffs have the right to dispute the debt within thirty days.  (Am. Compl. ¶ 12).  Title 15, Section 1692g requires that within the debt collector's initial communication or within five days thereafter, the debt collector shall send the consumer notification that if the consumer disputes any portion of the debt within a thirty day period, the debt collector will obtain verification of the debt and will provide the consumer with the name and address of the original creditor if different from the current

14

creditor. 15 U.S.C. 1692g(a). Plaintiffs state only in conclusory fashion that Nationstar "has failed to follow the guidelines of 1692g(a), which include sending to the consumer within 5 days: 1) listing the amount of the debt, 2) identifying who is the creditor 3) and any statements that give the consumer rights to dispute the debt within 30 days." (Am. Compl. ¶ 12). Plaintiffs do not provide any factual information about Nationstar's initial communication, such as when it was sent or its contents. Plaintiffs also omit to explain whether Nationstar sent any subsequent communication within five days of the initial communication or describe the contents of any subsequent communications by Nationstar. Plaintiffs' conclusory allegations in this regard are not sufficient to state a claim under Section 1692g because there is not sufficient factual detail to make their claim plausible. See, e.g., Echevarria v. Bank of Am., N.A., 632 F. App'x 1006, 1009 (11th Cir. 2015) (affirming dismissal of FDCPA claims which were formulaic and based on mere conclusory statements); Adams v. Homeward Residential, Inc., No. 13-0329-WS-B, 2014 WL 460936, at *4 (S.D. Ala. Feb. 5, 2014) (dismissing Section 1692g(a) claim because based on the reading of the complaint, there is no indication what the defendant's initial communication with the plaintiff was or whether the initial communication did or did not comport with Section 1692g(a)); Hardy v. Wells Fargo Bank N.A., No. 1:12-CV-851-SCJ-LTW, 2013 WL 12014436, at (N.D. Ga. Jan. 31, 2013) (dismissing cursorily pled Section 1692g(a) claim).

In any event, even if Plaintiffs had properly supported their claim with sufficient factual detail, Plaintiffs' Section 1692g(a) claim still fails as a matter of law because it

AO 72A
(Rev.8/82)

is time-barred.  Molesky v. State Collection & Recovery Servs., No. 3:12 cv 2639, 2015 WL 5746835, at *9 (N.D. Ohio Sept. 30, 2015) (explaining that there is only one initial communication and the FDCPA is not violated by subsequent communications lacking required notifications and the debt collector has no obligation to send validation notice with any communication other than the initial communication).  An action brought pursuant to the FDCPA must be brought within one year of the date on which the alleged violation occurred.  15 U.S.C. § 1692k(d).  The limitations period did not commence until the claim accrued, that is five days after Nationstar's initial communication.  Fillinger v. Lerner Sampson & Rothfuss, 624 F. App'x 338, 340 (6th Cir. 2015).  Although Plaintiffs do not explicitly state when Nationstar initially communicated with them in connection with collecting the debt, Plaintiffs attach correspondence from Nationstar, dated January 3, 2013, which attempted to collect $3,604.42 from Plaintiffs in order to bring their loan current.  (Am. Compl. ¶ 14 ("On January 3, 2013, Defendants informed Plaintiffs that the alleged debt was in default ."), Ex. B, Doc. 7-2, at 2).  Thus, Nationstar's initial communication with Plaintiffs was either January 3, 2013, or earlier.  Plaintiffs did not file the instant action until November 16, 2015, more than two years later.  Accordingly, Plaintiffs' Section 1692g(a) claim is untimely and should be **DISMISSED**.

      2.    Failure to Validate the Debt in Response to Plaintiffs' November 24, 2014 and January 27, 2015 Requests for Validation

Plaintiffs contend that Nationstar violated Section 1692g(b) of the FDCPA when

16

it failed to validate the debt after Plaintiffs requested that it do so on November 24, 2014, and again on January 27, 2014, and then continued its efforts to collect the debt. (Am. Compl. ¶¶ 18-20). Plaintiffs state that they sent Nationstar a letter on November 24, 2014, requesting that Nationstar validate the debt. Although Nationstar corresponded with Plaintiffs on December 1, 2015, indicating that it would respond by January 8, 2015, it did not do so. (Am. Compl. ¶ 18). Nationstar contends that correspondence attached to Plaintiffs' Amended Complaint shows that it satisfied its obligations to validate Plaintiffs' debt. In support, Nationstar points out that Plaintiffs' statements within their January 27, 2015 letter attached to the Amended Complaint show that it responded to Plaintiffs' November 24, 2014 request for validation of the debt and provided Plaintiffs with a copy of the Security Deed. (See Doc. 7-3, at 2-3).

Under Section 1692g(b), if the consumer notifies the debt collector in writing that the debt is disputed *within thirty days after the consumer's receipt of an initial notice of debt*, the debt collector shall cease collection of the debt until the debt collector obtains verification of the debt. 15 U.S.C. § 1692g(b); Nawab v. Unifund CCR Partners, 553 F. App'x 856, 861 (11th Cir. 2013). Thus, Section 1692g applies only if the consumer notifies the debt collector in writing within thirty days of receipt of the debt collector's initial communication that the debt, or any portion thereof, is disputed. Roach v. Bank of Am. Corp., No. 3:14-CV-703-J-39JBT, 2014 WL 7771739, at *4 (M.D. Fla. Dec. 9, 2014). Here, Plaintiffs' Amended Complaint does not allege that Plaintiffs disputed the debt within thirty days of receipt of Nationstar's initial

17

communication.  Plaintiffs' Amended Complaint does not challenge Nationstar's failure to respond to a request for debt validation within thirty days of an *initial communication*; rather it challenges Nationstar's failures to respond to generic "debt validation requests" Plaintiffs sent to Nationstar on November 24, 2014, and January 27, 2015.  (Am. Compl. ¶¶ 18, 19).  Indeed, Plaintiffs "debt validation requests" could not be considered a dispute of the debt within thirty days of Nationstar's initial communication as required by Section 1692g(b).  Plaintiffs attach to their Amended Complaint much earlier correspondence from Nationstar, dated January 3, 2013, in which Nationstar attempted to collect the debt from Plaintiffs and provided Plaintiffs with notice that they were in default under the terms and conditions of their Note and Security Deed.  (Am. Compl. ¶ 14 ("On January 3, 2013, Defendants informed Plaintiffs that the alleged debt was in default . . ."), Ex. B, Doc. 7-2, at 2 (January 3, 2013 letter indicating that Nationstar was seeking to collect $3,604.42 from Plaintiffs)).  While there is no indication that this was Nationstar's initial communication to Plaintiffs, it is apparent that, at the latest, Nationstar's initial communication was as of January 3, 2013, and Plaintiffs' requests for debt validation in this case occurred almost two years later. (Am. Compl. ¶¶ 18-19).  Because Plaintiffs have not alleged facts tending to show that they timely disputed the debt within thirty days after receiving the initial communications letter and that Nationstar failed to timely validate the debt after such dispute, Plaintiffs fail to state a claim for violation of Section 1692g(b).

Moreover, Plaintiffs' multiple requests for debt validation, occurring well outside

18

the thirty-day period for disputing the debt, did not trigger Nationstar's duty to validate the debt under Section 1692g(b).   The FDCPA does not require that the debt collector validate a debt every time a consumer requests that it do so.  Section 1692g of FDCPA provides consumers the opportunity to dispute and seek verification only after the debt collector's initial communication with the consumer.   <u>Munroe v. Specialized Loan Servicing, LLC</u>, No. 14-CV-1883 (MKB) (LB), 2016 WL 1248818, at *7 (E.D.N.Y. Mar. 28, 2016) (explaining that the text of the FDCPA does not entitle the consumer to continuously seek debt validation after each dunning notice, but rather the consumer is entitled to seek validation of the debt after the debt collector's initial communication); <u>Bonner v. The Bank of New York Mellon</u>, No. CV 15-3280 (SJF) (GRB), 2016 WL 1426515, at *6 (E.D.N.Y. Feb. 22, 2016) (explaining that the FDCPA does not require subsequent or successive validation notices upon request and that the initial validation notice was all that was required); <u>Molesky v. State Collection & Recovery Servs.</u>, No. 3:12 cv 2639, 2015 WL 5746835, at *9 (N.D. Ohio Sept. 30, 2015) (explaining that there is only one initial communication and the FDCPA is not violated by subsequent communications lacking required notifications); <u>Oliver v. U.S. Bancorp</u>, No. 14-CV-8948 (PKC), 2015 WL 4111908, at *4 (S.D.N.Y. July 8, 2015) (explaining that application of both Sections 1692g(a) and (b) depend on the existence of an initial communication from a debt collector).  Accordingly, Plaintiffs' Amended Complaint fails to state a claim for violation of Section 1692g(b).

19

### C.    Plaintiffs' Section 1692e and 1692f Claims

Plaintiffs also contend that Nationstar violated Section 1692e when it used false and deceptive means to collect a debt and Section 1692f when it used unfair or unconscionable means to collect a debt.  (Am. Compl. ¶¶ 48-49).  Nationstar contends that Plaintiffs fail to state a claim pursuant to Section 1692e and 1692f because Plaintiffs do not plausibly allege any false representation, unconscionable, unfair or deceptive means it used to collect a debt.

Nationstar is correct.  Plaintiffs' Amended Complaint does not refer the Court to any facts in support of their Sections 1692e and 1692f claims.  Plaintiffs do not further explain their legal theory and it is impossible to discern from Plaintiff's Amended Complaint what Plaintiffs believe Nationstar did to violate Sections 1692e and 1692f. Thus, Plaintiffs' Amended Complaint fails to state a claim pursuant to Sections 1692e and 1692f.  Iqbal, 556 U.S. at 678 (2009) (explaining that a complaint must contain specific factual matter, accepted as true, to state a claim for relief that is plausible on its face and to suggest the required elements of the claim).  Accordingly, Plaintiffs' Section 1692e and 1692f claims should be **DISMISSED**.

Moreover, under the circumstances, Plaintiffs should not be permitted to amend their Amended Complaint in order to bolster their Section 1692e and 1692f claims because amendment would be futile under the circumstances.  "An amendment adding a cause of action is considered futile if the new cause of action does not state a claim upon which relief can be granted," would otherwise be subject to dismissal, or if the

20

amendment would be immediately subject to summary judgment for defendant. <u>Spanish Broad. Sys. of Fla., Inc. v. Clear Channel Commnc'ns, Inc.</u>, 376 F.3d 1065, 1077 (11th Cir. 2004); <u>Galindo v. ARI Mut. Ins. Co.</u>, 203 F.3d 771, 777 n.10 (11th Cir. 2000). Plaintiffs indicate in their Response to Nationstar's Motion that Nationstar violated Sections 1692e and 1692f when it failed to communicate who the true owner of the debt was. In support, Plaintiffs point out that notices Nationstar sent them on November 18, 2014, and February 2, 2015, indicated that The Bank of New York Mellon Corp. was the owner of the debt even though the Clayton County records show that Newcastle Mortgage Securities Trust 2007-1 ("Newcastle") was the Assignee. (Pl.'s Resp. 5). These allegations do not aide Plaintiffs in stating a claim for violations of Sections 1692e and 1692f. Although Plaintiffs attach an Assignment to their Amended Complaint, dated October 23, 2014, showing an Assignment of the interests in the *Security Deed* from Nationstar Mortgage, LLC to Newcastle, the Assignment does not indicate any transfer of the *Note* to Newcastle. Just because the interests in the Security Deed were transferred to Newcastle does not mean the Note was also transferred. Indeed, the holder of the Note and the holder of interests in the Security Deed can be different. <u>You v. JP Morgan Chase Bank</u>, 293 Ga. 67, 71-72 (2013) (explaining that the holder of a deed to secure debt is authorized to exercise the power of sale in accordance with the terms of the deed even if it does not also hold the note or otherwise have any beneficial interest in the debt obligation underlying the deed); <u>see also</u> <u>Fabre v. Bank of Am.</u>, No. 12-15053, 2013 WL 3722118, at *3 (11th Cir. July 17, 2013); <u>Jorgensen</u>

21

v. Fed. Home Loan Mortg. Corp., No. 2:12-CV-00236-RWS, 2013 WL 5200598, at *3 (N.D. Ga. Sept. 13, 2013) (explaining that Complaints which include claims that the securitization of mortgage was improper, that the note and deed have been split, and that the note should be produced repeatedly fail).  Thus, Plaintiffs have alleged no facts tending to show that Nationstar falsely represented the owner of the debt, or otherwise used unconscionable, unfair or deceptive means to collect a debt.  Accordingly, amendment would be futile.

## CONCLUSION

Based on the foregoing reasons, this Court **RECOMMENDS** that Nationstar's first Motion to Dismiss be **DEEMED MOOT** (Doc. 4), Plaintiffs' Motion to Sever and Remand be **GRANTED** (Doc. 6), and Nationstar's Motion to Dismiss Plaintiff's Amended Complaint in Part be **GRANTED** as to Plaintiffs' FDCPA claims[3] (Doc. 9).

**SO ORDERED AND REPORTED AND RECOMMENDED**, this 29th day of July, 2016.


/s/ Linda T. Walker
LINDA T. WALKER
UNITED STATES MAGISTRATE JUDGE

---

[3] This Court has not addressed Nationstar's Motion to Dismiss Plaintiffs' quiet title claim because it has recommended that it be severed and remanded to the Superior Court of Clayton County.

AO 72A
(Rev.8/82)